**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **WILBERT WINCHESTER,**<br>   Plaintiff,<br>   vs.<br>**ADAM WARD, ET AL.,**<br>   Defendants. | CASE NO. 19-cv-02653-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 53 |

Plaintiff Wilbert Winchester brings this action against defendants Oakland Housing Authority ("OHA") and OHA officers Adam Ward, Muang Saeturn, and David Cach, alleging five causes of action for violations of the Fourth Amendment, pursuant to 42 U.S.C. section 1983, based on alleged unlawful detention, failure to intervene, illegal search, false arrest, deliberate fabrication of evidence, malicious prosecution, and *Monell* liability.

Now before the Court is defendants' motion for summary judgment, which came on for hearing on March 19, 2020. Having carefully considered the papers submitted, the arguments of the parties at the hearing, the admissible evidence, and the pleadings in this action, and for the reasons set forth below, defendants' motion is hereby **GRANTED** as to plaintiff's claims for fabrication of evidence, malicious prosecution, and *Monell* liability, and is **DENIED** as to all other claims.

**I.    BACKGROUND[1]**

On July 25, 2018, Officer Ward was driving past a large apartment building at 715 Peralta Street in West Oakland when he saw plaintiff and another man standing in a recessed alcove near

---

[1] The background facts set forth herein are undisputed unless stated otherwise. *See* Supporting Separate Statement in Support of Defendants' Motion for Summary Judgment, Dkt. No. 53-2; Statement of Disputed Facts in Support of Plaintiff's Opposition to Motion for Summary Judgment, Dkt. No. 54-1.

the main entrance to the building. The alcove was partially hidden from the street. Plaintiff had his back towards Officer Ward, while the other man faced plaintiff and the street. Officer Ward testified that the two men appeared to be handling something in their hands. Based on their behavior and his knowledge of drug activity in the area, Officer Ward suspected the men were engaging in a drug transaction. Plaintiff contends that he grew up in the area and was simply standing there to console his friend, whose brother had just died.

Officer Ward testified that when he pulled over, the men walked away. Plaintiff denies this fact. As Officer Ward approached, plaintiff placed a white package in his back-left jean pocket. Officer Ward then asked plaintiff for identification.[2] He proceeded to run a background check, which came back clear. Plaintiff contends that Officer Ward retained his identification. Officer Saeturn arrived to provide cover. Officer Ward asked Officer Saeturn to watch plaintiff while Officer Ward checked the alcove, where he first saw plaintiff, for any discarded items.

As Officer Ward emerged from the alcove, he noticed something in plaintiff's back-left jean pocket and bent forward to take a closer look. Officer Ward testified that plaintiff's pocket had holes, through which Officer Ward saw a "bright water balloon" material often used to package narcotics. Officer Ward and plaintiff then had the following colloquy, which can be heard on the footage from Officer Ward's body camera:

> **Plaintiff:** This ain't nothing, sir.
> **Ward:** Can I ask you what's in your . . . I'd rather you not reach into your pocket, but can I ask you what's in your pocket?
> **Plaintiff:** This is nothing right there, man. This is nothing. This is nothing. This is nothing. . . . What's the problem? What did we do wrong? We friends. We walking. We talking down the street. I'm trying to figure out what the problem is here, sir.
> **Ward:** Well, I'll tell you what the issue is. Is you're in an area that I know is known for narcotic activity.
> **Plaintiff:** Okay, I understand that. I understand that.
> **Ward:** I obviously saw you shoving something in your back pocket when I got here. And your behavior was very suspicious.
> **Plaintiff:** I didn't say I didn't put nothing in my back pocket.
> **Ward:** Well can I ask you what's in your back pocket? Do you have narcotics on you?

---

[2] Officer Ward appears to have turned on his body camera around this time. Officer Saeturn's body camera footage begins around the time she arrived on the scene.

2

> **Plaintiff:** No, sir. It's nothing.
> **Ward:** Okay. Do you mind if I check?
> **Plaintiff:** No, sir. . . . I'm not on no probation or nothing, sir.
> **Ward:** Okay.
> **Plaintiff:** No. I mean, if I'm under arrest, put me under arrest.
> **Ward:** Okay. Then you're being detained.
> **Plaintiff:** Okay, I be detained.
> **Ward:** I need you to put your hands behind your back.
> **Plaintiff:** What am I being detained for though?
> **Ward:** I'll explain it all to you.
> **Plaintiff:** What did I do?
> **Ward:** Just put your hands behind your back, sir. [Officer Ward begins to handcuff plaintiff.]
> **Plaintiff:** What did I do man, that's what I want to know. What did I do wrong? Regardless of what's in my back pocket, man.
> **Ward:** Well, it looks like . . . I see drugs in your back pocket, so I want to make . . . .
> **Plaintiff:** That's regardless, man.

Based on this exchange, Officer Ward believed plaintiff had consented to a search. He proceeded to search plaintiff.[3] The colloquy continued:

> **Plaintiff:** This is illegal search and seizure, sir. I ain't done anything wrong.
> **Ward:** I'm not searching you yet, sir.
> **Plaintiff:** This is illegal search and seizure. I'm just letting you know sir, I ain't done anything man. . . . Sir, we haven't done anything wrong sir.
> **Ward:** Okay, if that's the case, I'm gonna . . . .
> **Plaintiff:** But what you're doing is illegal though.
> **Ward:** Okay.
> **Plaintiff:** Cause we haven't done anything, man.
> **Ward:** Okay.
> **Plaintiff:** Regardless of what might be in my back pocket, I haven't done anything. . . . You can check me for weapons or whatever. You can check me for weapons or whatever. You can check me for weapons or whatever, but that's illegal search and seizure sir."

Upon searching plaintiff, Officer Ward found 15 balloons of heroin and four bindles of cocaine in his back-left jean pocket. Officer Ward also found a digital scale in plaintiff's backpack. Plaintiff was charged with possession of these items for sale. For reasons unknown and not identified on the record, the Alameda County District Attorney's Office dismissed the criminal complaint against plaintiff after a motion to suppress was filed but before it was heard.

---

[3] Officer Ward testified at his deposition that prior to searching plaintiff, he did not see plaintiff possess anything illegal. When considered in the context of his other testimony, Officer Ward appears to have meant that he saw the narcotics packaging material but not actual drugs.

3

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

A moving party defendant bears the burden of specifying the basis for the motion and the elements of the causes of action upon which the plaintiff will be unable to establish a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The burden then shifts to the plaintiff to establish the existence of a material fact that may affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In the summary judgment context, the court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). If the plaintiff "produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by" defendants. *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1277 (9th Cir. 2017). "[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge." *George v. Edholm*, 752 F.3d 1206, 1214 (9th Cir. 2014) (alteration in original) (quotation omitted). Thus "where evidence is genuinely disputed on a particular issue—such as by conflicting testimony—that issue is inappropriate for resolution on summary

4

1  judgment." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (internal quotation marks
2  omitted).

**III. DISCUSSION**

**A. Detention**

"[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions [or] by putting questions to him if the person is willing to listen[.]" *Fla. v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983). However, the individual "may not be detained even momentarily without reasonable, objective grounds for doing so[.]" *Id.* at 498, 103 S.Ct. at 1324 (citing *United States v. Mendenhall*, 446 U.S. 544, 556, 100 S.Ct. 1870, 1878, 64 L.Ed.2d 497 (1980)). Law enforcement must have "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,'" even if they lack probable cause under the Fourth Amendment. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884-85, 20 L.Ed.2d 889 (1868)). Reasonable suspicion is "'a particularized and objective basis' for suspecting the person stopped of criminal activity." *United States v. Crapser*, 472 F.3d 1141, 1147 (9th Cir. 2007) (quoting *United States v. Tiong*, 224 F.3d 1136, 1140 (9th Cir. 2000)).

Defendants argue that Officer Ward had reasonable suspicion to detain plaintiff based on (i) plaintiff being present in an area known for narcotic activity; (ii) plaintiff placing a white package in his back-left jean pocket as Officer Ward approached him; (iii) plaintiff's behavior and interaction with the other man, including "hiding" in the recessed alcove of the building, facing away from the street, "manipulating" something with his hands, and "having the other gentleman keep an eye on him while also looking out onto the street"; and (iv) plaintiff walking away when Officer Ward approached, with "a startled look" as if he was "engaging in something inappropriate." However, only the first two[4] of these purported facts appears undisputed.

---

[4] Although plaintiff's separate statement denies that this was an area known for narcotic activity, plaintiff does not directly dispute this fact. Rather, he has explained his purported reason for being in the area.

5

1    Contrary to defendants' assertions, plaintiff proffers that he stopped in the alcove to console his
2    friend, not to "hide" or have the other man "keep an eye [out]" as he "manipulate[ed] something"
3    in his hands.  Plaintiff also disagrees with testimony that he walked away when Officer Ward
4    approached.

5    These disputed facts are material to the issue of reasonable suspicion.  That is, placing a
6    package in one's pocket while standing in an area with frequent drug activity, without more, is
7    insufficient to establish reasonable suspicion for a detention.  Moreover, because the initial
8    moments of this encounter were not captured by a body camera, the Court is left with two
9    conflicting versions of events: plaintiff's and Officer Ward's.  Credibility issues that go to the
10   ultimate question of whether Officer Ward had reasonable suspicion to detain plaintiff are to be
11   resolved by a jury, not the Court.  As such, defendants' motion is denied with respect to plaintiff's
12   claim of unlawful detention.[5]

### B. Warrantless Search

#### 1. *Probable Cause*

The Fourth Amendment generally prohibits searches without probable cause.  "Probable cause for a search requires a fair probability that contraband or evidence of a crime will be found in a particular place, based on the totality of the circumstances." *United States v. Fries*, 781 F.3d 1137, 1150 (9th Cir. 2015).  Fair probability does not mean "certainty or even a preponderance of the evidence," *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006), but "[m]ere suspicion, common rumor, or even strong reason to suspect are not enough," *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citation omitted).  Although probable cause is a legal question, "the factual matters underlying the judgment of reasonableness generally mean that probable cause is a question for the jury . . . ; and summary judgment is appropriate only if no

---

[5] For purposes of this motion only, the Court construes a *de facto* detention beginning after Officer Ward saw plaintiff put something in his back pocket but before Officer Ward told plaintiff he was being detained.  Plaintiff suggests the detention may have begun when Officer Ward retained plaintiff's identification even after his background check came back clear.  The Court need not resolve the dispute at this juncture, however, because defendants are not entitled to summary judgment even based on their assertion that the detention began later in the encounter.

1    reasonable jury could find that the officers did or did not have probable cause to [act]." *McKenzie*
2    *v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984).
3          Defendants contend that the same totality of the circumstances that justified initial
4    detention, combined with Officer Ward's "undisputed observation" that he saw drug packaging
5    material through holes in plaintiff's back pocket, supports a finding of probable cause for the
6    warrantless search. As explained in Section III.A., several material facts going to the basis for the
7    detention—including what Officer Ward saw when he first approached the scene and whether
8    plaintiff immediately walked away when seeing officers—are in dispute. The undisputed facts
9    proffered by defendants are not enough to establish reasonable suspicion, and thus, necessarily fall
10   short of establishing probable cause. With respect to what occurred post-detention and pre-search,
11   namely, Officer Ward's testimony that he saw narcotics packaging material through holes in
12   plaintiff's pocket, plaintiff disputes this testimony, and in any event, reasonable factfinders could
13   disagree about whether Officer Ward's conclusions were reasonable and whether such evidence
14   established probable cause.
15         Defendants also contend that plaintiff "impliedly confirmed" Officer Ward's observation
16   that plaintiff had narcotics in his pocket when plaintiff asked what he had done wrong
17   "[r]egardless of what[] [was] in [his] back pocket." This argument fails to persuade. When asked
18   if he had narcotics in his pocket, plaintiff stated "no" and "it's nothing" several times. Moreover,
19   the Court declines to find, as a matter of law, that "any person naturally would have" refuted
20   Officer Ward's statements if they were untrue. A detainee's failure to respond directly to
21   questions from an officer—in this case, by questioning the basis for the officer's actions
22   "regardless" of the circumstances—does not necessarily signal acquiescence. There could be
23   many reasonable explanations for such a response, and relatedly, this response could be construed
24   differently by reasonable people.[6] Accordingly, defendants' motion for summary judgment on the

---

[6] Defendants also contend that plaintiff's response amounted to an adoptive admission under Federal Rule of Evidence 801(d)(2)(B). This argument, too, fails to persuade. Rule 801(d)(2)(B) is an evidentiary rule that governs when a statement is admissible as a hearsay exception. The rule does not determine whether a statement is an admission as a matter of law. Moreover, as explained, whether plaintiff's response constitutes an "adoptive admission" or

7

ground that there was probable cause for the search is denied.[7]

### 2. *Voluntary Consent*

A search conducted without a warrant or probable cause may satisfy the requirements of the Fourth Amendment if the search is conducted pursuant to valid consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). For consent to be valid, it must be voluntary. *Id*. Consent may be implied from words or conduct that could reasonably be viewed as such. *See Pavao v. Pagay*, 307 F.3d 915, 919-21 (9th Cir. 2002). Consent is "not lightly to be inferred," however, and generally is a question of fact to be determined based on the totality of the circumstances. *United States v. Patacchia*, 602 F.2d 218, 219 (9th Cir. 1979)).

Defendants argue plaintiff consented to a search of his person during this back-and-forth:

> **Ward:** Well can I ask you what's in your back pocket? Do you have narcotics on you?
> **Plaintiff:** No, sir. It's nothing.
> **Ward:** Okay. Do you mind if I check?
> **Plaintiff:** No, sir. . . .

Plaintiff's declaration states that he intended to communicate that he did not consent to a search.

The Court finds the evidence insufficient to establish consent at the summary judgment stage. Specifically, plaintiff's response reasonably could be construed as having a double meaning: it could be understood as "no, I do not mind if you check my pocket," or "No. You may not check my pocket." A factfinder must consider this language, as well as plaintiff's tone and behavior during the incident, to resolve the ambiguity.

Moreover, this portion of the colloquy between plaintiff and Officer Ward cannot be

---

"acquiescence" calls for an evaluation of the facts and thus is not appropriate for a decision on summary judgment.

[7] Defendants assert that plaintiff admitted in written discovery that Officer Ward had probable cause to search him. Plaintiff contends that this response was taken out of context, as plaintiff intended to admit that there was probable cause to search plaintiff after he was placed under arrest. Plaintiff proffers a declaration from his counsel attesting to this fact, to which defendants object. While the Court is wary of attempts to clarify discovery responses after the fact, there is sufficient evidence in the record to suggest a factual dispute over probable cause regardless of the admission.

viewed in isolation. Defendants emphasize that plaintiff went on to repeatedly state, "[y]ou can check me for weapons or whatever man." In essentially the same breath, however, plaintiff repeatedly stated that the officers were performing "an illegal search and seizure." Plaintiff also continued to say "no," to ask what he had done wrong, and to state, "if I'm under arrest, put me under arrest." In short, plaintiff's words and actions raise disputed issues of fact regarding whether he voluntarily consented to the search. The Court thus denies defendants' motion for summary judgment as to plaintiff's claim of an unlawful search.

### C.  Fabrication of Evidence

A plaintiff may bring a section 1983 claim on a theory that the "government violated [his] due process rights by subjecting [him] to criminal charges based on deliberately-fabricated evidence." *Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015) (citing *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001)). "To prevail on a [section] 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) (citation omitted). Deliberate fabrication can be established by circumstantial evidence. *Id.* at 793. For example, evidence that officials "continued their investigation of [a person] despite the fact that they knew or should have known that he was innocent," *Devereaux.* 263 F.3d at 1076, can raise the inference that the investigator has an "unlawful motivation" to frame an innocent person, *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010). Deliberate fabrication also can be shown by direct evidence, for example, when "an interviewer . . . deliberately mischaracterizes witness statements in her investigative report." *Id.* In cases involving direct evidence, the plaintiff need not prove that there was knowledge or reason to know of the plaintiff's innocence. *Id.*

In his fourth cause of action for deliberate fabrication of evidence, plaintiff alleges that Officer Ward knowingly and intentionally submitted a false police report and probable cause declaration in which he stated that plaintiff consented to the search. Defendants contend that there is no evidence to support plaintiff's deliberate fabrication claim because plaintiff consented to the search, or at a minimum, because any reasonable officer would have objectively believed plaintiff

1  had so consented.  As explained in Section III.B.2, the Court is not persuaded that plaintiff's

2  conduct reasonably would be viewed as giving consent.

3  However, not all inaccuracies in a police report give rise to a constitutional claim.

4  *Spencer*, 857 F.3d at 798 (citing cases).  Mere "careless[ness]" is insufficient, *Gausvik v. Perez*,

5  345 F.3d 813, 817 (9th Cir. 2003), as are mistakes of "tone," *Costanich*, 627 F.3d at 1113.  Here,

6  Officer Ward states in the police report that plaintiff "said he did not have a problem with [a

7  search]."  While technically inaccurate, the statement does not include quotation marks, nor does

8  plaintiff proffer any evidence to suggest Officer Ward deliberately framed him, misrepresented his

9  words, or otherwise fabricated evidence.  Without any evidence to support this claim, plaintiff's

10 fourth cause of action for fabrication of evidence is dismissed.

### D. Malicious Prosecution (Fifth Cause of Action)

12  "To maintain a [section] 1983 action for malicious prosecution, a plaintiff must show that

13 the defendants prosecuted [him] with malice and without probable cause, and that they did so for

14 the purpose of denying [him] a specific constitutional right."  *Smith v. Almada*, 640 F.3d 931, 938

15 (9th Cir. 2011) (internal quotation marks and brackets omitted).  The claim also requires "'the

16 institution of criminal proceedings against another who is not guilty of the offense charged' and

17 that 'the proceedings have terminated in favor of the accused.'"  *Lacey v. Maricopa Cty.*, 693 F.3d

18 896, 919 (9th Cir. 2012) (quoting Restatement (Second) of Torts § 653 (1977)).

19 There is "a rebuttable presumption that a prosecutor exercises independent judgment

20 regarding the existence of probable cause in filing a complaint."  *Smiddy v. Varney*, 803 F.2d

21 1469, 1471 (9th Cir. 1986).  "The presumption can be overcome, for example, by evidence that the

22 officers knowingly submitted false information," which caused the filing of the complaint.  *Id.*

23 Unless overcome, however, the presumption "insulates the arresting officers from liability for

24 harm suffered after the prosecutor initiated formal prosecution."  *Id.*

25 Here, plaintiff asks the Court to rule in his favor based on conclusory statements in his

26 opposition that defendants acted "maliciously and with reckless disregard of [p]laintiff's rights."

27 However, the Ninth Circuit has held that "a plaintiff's account of the incident in question, by

28 itself, does not overcome the presumption of independent [prosecutorial] judgment."  *Newman v.*

10

1  *Cty. of Orange*, 457 F.3d 991, 994 (9th Cir. 2006). Even if Officer Ward submitted an inaccurate report to the prosecutor, there is no evidence in the record that this was done with malice, recklessness, or even sufficient knowledge. Thus, plaintiff falls far short of rebutting the presumption that his case was properly prosecuted. His fifth cause of action for malicious prosecution is dismissed.

### E.     Qualified Immunity

Qualified immunity is a question of law, not of fact. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008). The qualified immunity doctrine shields a government official performing discretionary functions from liability for civil damages if the officer's conduct does not violate a "clearly established statutory or constitutional right of which a reasonable person would have known." *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S.Ct. 548, 551 (2017)). "Because the focus is on whether the officer had fair notice that [the] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004). "[S]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Mullenix v. Luna,* 136 S.Ct. 305, 308 (2015) (internal quotation marks omitted). While the doctrine "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White,* 137 S.Ct. at 551.

Plaintiff cites two cases, *Sialoi v. City of San Diego*, 823 F.3d 1223 (9th Cir. 2016) and *United States v. Reid,* 226 F.3d 1020 (9th Cir. 2000), to argue that defendants' conduct was clearly unlawful. Both cases, however, are easily distinguishable. In *Sialoi*, over 20 officers responded to a report of two armed black males in a parking lot. 823 F.3d at 1227-28. They arrived on the scene armed with assault rifles and proceeded to detain, handcuff, and search members of a large Samoan family who were celebrating a child's birthday. *Id*. at 1228. *Reid* involved the search of an apartment based on the alleged consent of a non-resident. 226 F.3d at 1023-24. This case is markedly different from both.

11

1    Nevertheless, defendants are entitled to qualified immunity only if, assuming the detention,
2 search, and arrest were unlawful, defendants acted with a reasonable, though mistaken, belief that
3 under established case law, their conduct was reasonable. Drawing all reasonable inferences in
4 plaintiff's favor, and for the reasons discussed in the previous sections, genuine disputes of
5 material fact exist with respect to what Officer Ward saw when arriving on the scene and
6 examining plaintiff's pocket. Given these factual disputes, qualified immunity is not appropriately
7 decided on summary judgment.

8    If the jury believes plaintiff's version of events, that is, that the only factors supporting the
9 detention and search were plaintiff's presence in an area with heavy narcotics activity and plaintiff
10 putting a white package in his pocket, defendants' conduct was unreasonable under clearly
11 established law. *See United States v. Job*, 871 F.3d 852, 861 (9th Cir. 2017) ("From the record
12 available, it appears that Officer Dedonato only observed: (1) Job at a location where the officers
13 were conducting either an arrest of another person . . . ; (2) Job and Holt open the garage door as
14 the police were arriving; (3) Job appear surprised and nervous; and (4) Job wearing baggy clothes,
15 'with the pockets appearing to be full of items.' These facts taken together do not support the
16 conclusion that the officers had reasonable suspicion that Job was engaged in criminal activity.");
17 *United States v. I.E.V.*, 705 F.3d 430, 438 (9th Cir. 2012) ("[W]e join with our sister circuits that
18 have refused to allow police officers to justify a *Terry* search based on mere nervous or fidgety
19 conduct and touching of clothing."); *Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d
20 357 (1979) (holding that officers did not have reasonable suspicion for an investigatory stop when
21 they detained two men who were walking away from each other in an alley in an area known for
22 drug trafficking because the "activity was no different from the activity of other pedestrians in that
23 neighborhood"). If, on the other hand, the jury believes Officer Ward's version of events,
24 including that plaintiff was handling something in his hands as he stood in the alcove, the other
25 man kept watch, the men immediately walked away when Officer Ward approached, and later,
26 Officer Ward saw narcotics packaging material through holes in plaintiff's pockets, then probable
27 cause exists and the Court need not reach the issue of qualified immunity.
28

1    **F.    *Monell* Claim**

In his opposition, plaintiff abandons his *Monell* claim. As such, defendants' motion to dismiss this claim is **GRANTED**.

**IV.    CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment is **GRANTED** as to plaintiff's claims for fabrication of evidence, malicious prosecution, and *Monell* liability, and is **DENIED** as to all other claims.[8]

Further, in light of the United States District Court for the Northern District of California General Order 72-3 (IN RE: Coronavirus Disease Public Health Emergency), the Court provides notice that the jury trial scheduled for August 31, 2020 is **VACATED**. At this time, the Court intends to reset the jury trial date to some point on or after November 2, 2020, subject to the parties' and their counsel's availability. Thus, the parties **SHALL** meet and confer with respect to any conflicts they and their counsel may have as to any potential dates on or after November 2, 2020.

A compliance hearing is set on **9:01 a.m.** calendar on **Friday, July 3, 2020**. Five (5) business days prior to the date of the compliance hearing, the parties shall jointly file their and their counsel's availability for a potential jury trial date on or after November 2, 2020. If compliance is complete, the parties need not electronically appear, and the compliance hearing will be taken off calendar. Parties should check the docket for details on how to access any electronic hearing, if required.

This Order terminates Docket Number 53.

**IT IS SO ORDERED.**

Dated: June 3, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[8] In their reply, defendants object to certain other evidence proffered by plaintiff: (i) the report of plaintiff's expert, Roger Clark; and (ii) a declaration from plaintiff. As to the expert report, insofar as Mr. Clark offers improper legal conclusions, his opinions are excluded for purposes of rendering this decision on summary judgment. With respect to plaintiff's declaration, this evidence was refiled with plaintiff's signature, mooting the objection.